JOHN T. JASNOCH (CA 281605)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
jjasnoch@scott-scott.com

*Counsel for Plaintiff David McCown*
*and the Proposed Class*

[Additional counsel on signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID MCCOWN, Individually and on Behalf of All Others Similarly Situated, | Case No. <u>5:26-cv-01550</u> |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| NAVAN, INC., ARIEL COHEN, AMY BUTTE, ANNE GIVISKOS, BEN HOROWITZ, ARIF JANMOHAMED, MICHAEL KOUREY, CLARA LIANG, SANDESH PATNAM, ILAN TWIG, ANRÉ WILLIAMS, OREN ZEEV, GOLDMAN SACHS & CO. LLC, CITIGROUP GLOBAL MARKETS INC., JEFFERIES LLC, MIZUHO SECURITIES USA LLC, MORGAN STANLEY & CO. LLC, BNP PARIBAS SECURITIES CORP., CITIZENS JMP SECURITIES, LLC, OPPENHEIMER & CO. INC., MUFG SECURITIES AMERICAS INC., NEEDHAM & COMPANY, LLC, BTIG, LLC, LOOP CAPITAL MARKETS LLC, ACADEMY SECURITIES, INC., and ROSENBLATT SECURITIES INC., | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff David McCown ("Plaintiff") makes the following allegations, individually and on behalf of all others similarly situated, by and through his counsel upon information and belief except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and beliefs are based upon, *inter alia*, counsel's investigation, which included, among other things, review and analysis of regulatory filings made by Navan, Inc. ("Navan" or the "Company") with the U.S. Securities and Exchange Commission ("SEC"), analyst and media reports, conference call transcripts, Company press releases, and other publicly available information. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.     Plaintiff brings this federal class action under §§11, 12, and 15 of the Securities Act of 1933 ("Securities Act") against (i) Navan, (ii) certain of the Company's senior executives and directors who signed the Registration Statement, effective October 31, 2025, issued in connection with the Company's initial public offering (the "IPO" or the "Offering"), and the underwriters of the Offering. Plaintiff alleges that the Registration Statement and Prospectus (filed with the SEC on September 19, 2025, and October 30, 2025, respectively) including all amendments thereto (collectively, the "Offering Documents"),[1] contained materially incorrect or misleading statements and/or omitted material information that was required by law to be disclosed. Defendants are each strictly liable for such misstatements and omissions therefrom (subject only to their ability to establish a "due diligence" affirmative defense).

2.     Navan, which is headquartered in Palo Alto, California, provides booking and expense reporting software for business travelers. On or about October 31, 2025, Navan conducted its IPO, offering 36,924,406 million shares of its common stock to the investing public at a price of $25 per share (the "Offering Price"). Defendants anticipated generating gross proceeds of over $920 million from the IPO.

---

[1]     *See* Navan, Inc., Registration Statement (Form S-1) (Sep. 19, 2025); Navan, Inc., Amended Registration Statement (Form S-1) (Oct. 10, 2025); Navan, Inc., Prospectus (Form 424B4) (Oct. 30, 2025).

3.    According to the Offering Documents, Navan's business had "experienced rapid growth," and the Company's solutions catered to "customers of all sizes across any industry vertical." Consequently, the Company's revenue "grew 33% year-over-year" from 2024 to 2025, its Gross Booking Volume ("GBV") "grew 32% year-over-year" from 2024 to 2025, and its "usage yield" was "approximately 7%" in each of those years as well.

4.    Unbeknownst to Plaintiff and other potential investors, however, at the time of the IPO, the Company had increased its "sales and marketing" expenses by 39% for the quarter ending October 31, 2025 ($95 million) – *which was also the same day as the IPO* – compared to the quarter ending July 31, 2025 ($68.5 million).

5.    As these true facts emerged after the Offering, the Company's shares fell sharply. By the commencement of this action, Navan's shares traded as low as $10.45 per share, a decline of nearly 60% from the Offering Price.

6.    By this action, Plaintiff, on behalf of himself and other members of the Class (defined below) who also acquired Navan's shares pursuant and traceable to the Offering, now seeks to obtain a recovery for the damages suffered as a result of Defendants' violations of the Securities Act, alleged herein.

7.    The claims asserted herein and purely strict liability and negligence claims. Plaintiff expressly eschews any allegation sounding in fraud.

**JURISDICTION AND VENUE**

8.    The claims asserted herein arise under and pursuant to §§11, 12(a)(2), and 15 of the Securities Act, 15 U.S.C. §§77k, 77l(a)(2), and 77o, respectively.

9.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §22 of the Securities Act, 15 U.S.C. §77v.

10.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the acts and transactions giving rise to the violations of law complained of occurred, in part, in this District, certain Defendants reside and/or transact business in this District, and the Company maintains its corporate headquarters in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the U.S. mail, interstate telephone and wire communications, and the facilities of a national securities exchange.

12.     **Divisional Assignment**: This action should be assigned to the San Jose Division of this Court, as the Company is headquartered in Santa Clara, California, under Civil Local Rule 3-2(d).

**PARTIES**

**I.     PLAINTIFF**

13.     Lead Plaintiff David McCown, as set forth in his certification, purchased shares of the Company's common stock that were issued pursuant and traceable to the Registration Statement and Offering, and was damaged thereby.

**II.     DEFENDANTS**

**A.     The Company**

14.     Defendant **Navan, Inc.** is a corporation organized and existing under the laws of Delaware with its principal place of business in Palo Alto, California.  Navan operates a platform combining travel booking, corporate-issued payment cards, expense reporting, and analytics solutions to businesses.  Navan's stock trades on Nasdaq under the ticker symbol "NAVN."

**B.     The Individual Defendants**

15.     Defendant **Ariel Cohen** ("Cohen") is, and was at all relevant times, the Chief Executive Officer (Principal Executive Officer) and Chairperson of the Board of Directors. Defendant Cohen reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

16.     Defendant **Amy Butte** ("Butte") was at all relevant times the Chief Financial Officer (Principal Financial Officer).  Defendant Butte reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

17.     Defendant **Anne Giviskos** ("Giviskos") is, and was at all relevant times, the Chief Accounting Officer (Principal Accounting Officer).  Defendant Giviskos reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

18.     Defendant **Ben Horowitz** ("Horowitz") is, and was at all relevant times, a Director of the Company.  Defendant Horowitz reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

19.     Defendant **Arif Janmohamed** ("Janmohamed") is, and was at all relevant times, a Director of the Company.  Defendant Janmohamed reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

20.     Defendant **Michael Kourey** ("Kourey") is, and was at all relevant times, a Director of the Company.  Defendant Kourey reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

21.     Defendant **Clara Liang** ("Liang") is, and was at all relevant times, a Director of the Company.  Defendant Liang reviewed, approved, and participated in making statements in the Offering Documents, which she signed.

22.     Defendant **Sandesh Patnam** ("Patnam") is, and was at all relevant times, a Director of the Company.  Defendant Patnam reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

23.     Defendant **Ilan Twig** ("Twig") is, and was at all relevant times, the Chief Technology Officer and a Director of the Company.  Defendant Twig reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

24.     Defendant **Anré Williams** ("Williams") is, and was at all relevant times, a Director of the Company.  Defendant Williams reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

25.     Defendant **Oren Zeev** ("Zeev") is, and was at all relevant times, a Director of the Company.  Defendant Zeev reviewed, approved, and participated in making statements in the Offering Documents, which he signed.

CLASS ACTION COMPLAINT

26.     In addition, although not an element of Plaintiff's (or the Class's) claims (and is instead an issue on which each Individual Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense), no Individual Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.

**C.     The Underwriter Defendants**

27.     The Underwriter Defendants were also instrumental in soliciting investors and in underwriting the Navan shares that were offered and sold in or traceable to the IPO available to Plaintiff and the other members of the Class.

28.     Defendant **Goldman Sachs & Co. LLC** ("Goldman Sachs") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Goldman Sachs acted as a representative of all the underwriters.  Goldman Sachs also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Goldman Sachs' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **12,923,543** shares of Navan common stock to investors in the IPO.  Defendant Goldman Sachs conducts business in this District.

29.     Defendant **Citigroup Global Markets Inc.** ("Citigroup") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Citigroup also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Citigroup's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **9,600,346** shares of Navan common stock to investors in the IPO.  Defendant Citigroup conducts business in this District.

30.     Defendant **Jefferies LLC** ("Jefferies") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents.  Jefferies also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Jefferies' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **2,584,708** shares of Navan common stock to investors in the IPO.  Defendant Jefferies conducts business in this District.

31.     Defendant **Mizuho Securities USA LLC** ("Mizuho") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents.  Mizuho also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Mizuho's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **3,692,441** shares of Navan common stock to investors in the IPO.  Defendant Mizuho conducts business in this District.

32.     Defendant **Morgan Stanley & Co. LLC** ("Morgan Stanley") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents.  Morgan Stanley also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Morgan Stanley's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **1,846,220** shares of Navan common stock to investors in the IPO.  Defendant Morgan Stanley conducts business in this District.

33.     Defendant **BNP Paribas Securities Corp.** ("BNP Paribas") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents.  BNP

Paribas also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  BNP Paribas' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **1,292,354** shares of Navan common stock to investors in the IPO.  Defendant BNP Paribas conducts business in this District.

34.     Defendant **Citizens JMP Securities, LLC** ("Citizens JMP") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Citizens JMP also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Citizens JMP's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **1,661,598** shares of Navan common stock to investors in the IPO.  Defendant Citizens JMP conducts business in this District.

35.     Defendant **Oppenheimer & Co. Inc.** ("Oppenheimer") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Oppenheimer also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Oppenheimer's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **1,107,732** shares of Navan common stock to investors in the IPO.  Defendant Oppenheimer conducts business in this District.

36.     Defendant **MUFG Securities Americas Inc.** ("MUFG") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. MUFG also participated in conducting and promoting the roadshow for the IPO and paying for the

expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. MUFG's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **738,488** shares of Navan common stock to investors in the IPO. Defendant MUFG conducts business in this District.

37. Defendant **Needham & Company, LLC** ("Needham") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Needham also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Needham's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **553,866** shares of Navan common stock to investors in the IPO. Defendant Needham conducts business in this District.

38. Defendant **BTIG, LLC** ("BTIG") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. BTIG also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. BTIG's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **369,244** shares of Navan common stock to investors in the IPO. Defendant BTIG conducts business in this District.

39. Defendant **Loop Capital Markets LLC** ("Loop Capital") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Loop Capital also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses. Loop Capital's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **276,933** shares of

Navan common stock to investors in the IPO.  Defendant Loop Capital conducts business in this District.

40.    Defendant **Academy Securities, Inc.** ("Academy Securities") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Academy Securities also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Academy Securities' participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **92,311** shares of Navan common stock to investors in the IPO.  Defendant Academy Securities conducts business in this District.

41.    Defendant **Rosenblatt Securities Inc.** ("Rosenblatt") was an underwriter of the Company's IPO, serving as a financial advisor for and assisting in the preparation and dissemination of the Company's materially misleading and incomplete Offering Documents. Rosenblatt also participated in conducting and promoting the roadshow for the IPO and paying for the expenses of the Individual Defendants who participated in the roadshow, including lodging and travel, among other expenses.  Rosenblatt's participation in and its solicitation of offers in connection with the IPO were motivated by its financial interests, and it sold **184,622** shares of Navan common stock to investors in the IPO.  Defendant Rosenblatt conducts business in this District.

42.    The Defendants listed above are collectively referred to herein as the "Underwriter Defendants."   Pursuant to the Securities Act, each Underwriter Defendant is liable for the materially inaccurate, misleading, and incomplete statements in the Offering Documents.  In addition, although not an element of Plaintiff's (or the Class's) claims (and is instead an issue on which each Underwriter Defendant bears the burden of proof to the extent it seeks to assert it as an affirmative defense), no Underwriter Defendant conducted an adequate due diligence investigation in connection with the matters alleged herein and will accordingly be unable to establish a statutory "due diligence" affirmative defense under the Securities Act.

43.    Each Underwriter Defendant named herein is an investment banking firm whose activities include, *inter alia*, the underwriting of public offerings of securities.  As the underwriters of the IPO, the Underwriter Defendants earned $36.7 million in underwriting discounts and commissions.

44.    As underwriters, the Underwriter Defendants met with potential investors in the IPO and presented highly favorable, but materially misleading, information about the Company, its business, products, plans, and financial prospects, and omitted to disclose material information required to be disclosed under the federal securities laws and applicable regulations promulgated thereunder.

45.    Representatives of the Underwriter Defendants assisted Navan and the Individual Defendants in planning the IPO and purported to conduct an adequate and reasonable investigation into the business, operations, products, and plans of the Company, an undertaking known as a "due diligence" investigation.  During their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning the Company's business, operations, financial condition, products, performance, and prospects.

46.    In addition to having access to internal corporate documents, the Underwriter Defendants and/or their agents, including their counsel, had access to Navan's management and directors to determine: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price at which Navan's common stock would be sold; (iii) the language to be used in the Offering Documents; (iv) what disclosures about Navan would be made in the Offering Documents; and (v) what responses would be made to the SEC in connection with its review of the Offering Documents.  As a result of those constant contacts and communications between the Underwriter Defendants' representatives and Navan's management and directors, the Underwriter Defendants were aware of, or at a minimum should have known of, Navan's undisclosed issues, and of the Offering Document's materially misleading and incomplete statements and omissions as alleged herein.

47.    The Underwriter Defendants caused the Registration Statement to be filed with the SEC and declared effective in connection with the IPO so that they, and the Individual Defendants,

1    could offer to sell (and did in fact sell) the Navan shares registered thereby to members of the Class

2    pursuant to the Offering Documents.

3                                    **SUBSTANTIVE ALLEGATIONS**

4          48.      On June 20, 2025, Navan filed with the SEC a draft registration statement on Form

5    S-1, which would be used for the IPO following a series of amendments.  On October 30, 2025,

6    Navan filed its Prospectus with the SEC, which registered 36,924,406 Navan shares for public

7    sale.  The SEC declared the Registration Statement effective on October 31, 2025.  Defendants

8    priced the IPO at $25 per share.

9          49.      The Offering Documents were negligently prepared and, as a result, contained

10   untrue statements of material facts or omitted to state other facts necessary to make the statements

11   made not misleading, and were not prepared in accordance with the rules and regulations

12   governing their preparation.

13         50.      According to the Offering Documents, Navan's business had "experienced rapid

14   growth," and the Company's solutions catered to "customers of all sizes across any industry

15   vertical."  Consequently, the Company's revenue "grew 33% year-over-year from $402 million in

16   fiscal 2024 to $537 million in fiscal 2025, and grew 30% period-over-period from $254 million

17   for the six months ended July 31, 2024 to $329 million for the six months ended July 31, 2025."

18   Navan's GBV (calculated as "the total amount paid for valid bookings on our platform, measured

19   on a booked basis and inclusive of total price, taxes, and fees, and adjusted for cancellations and

20   refunds") grew "32% year-over-year from $5.0 billion in fiscal 2024 to $6.6 billion in fiscal 2025,

21   and grew 34% period-over-period from $3.1 billion for the six months ended July 31, 2024 to $4.1

22   billion for the six months ended July 31, 2025."  Additionally, Navan's "usage yield" (which

23   "equals usage-based revenue divided by GBV for such period and represents [Navan's] ability to

24   convert GBV into usage-based revenue") "was approximately 7% in each of fiscal 2025 and fiscal

25   2024 and for the six months ended July 31, 2025, and 2024."

26         51.      The Offering Documents, however, were false and misleading and omitted to state

27   that the Company would increase its sales and marketing expenses by ***39%*** just months after the

28   IPO to sustain its revenue, GBV, and usage yield growth.

52.    Defendants were required to disclose this material information in the Offering Documents for at least three independent reasons.  *First*, SEC Regulation S-K, 17 C.F.R. §229.303 (Item 303), required disclosure of any known events or uncertainties that at the time of the Offering had caused, or were reasonably likely to cause, Navan's disclosed financial information not to be indicative of future operating results.  At the time of the Offering, on October 31, 2025, Navan possessed information showing that revenue was decelerating for the quarter ending October 31, 2025.  These undisclosed negative events and trends were likely to (and in fact, did) materially and adversely affect Navan's financial state and rendered the disclosed results and trends in the Offering Documents misleading and not indicative of the Company's future operating results.

53.    *Second*, SEC Regulation S-K, 17 C.F.R. §229.105 (Item 105), required, in the "Risk Factor" section of the Offering Documents, a discussion of the most significant factors that make the offering risky or speculative, and that each risk factor adequately describes the risk.  Navan's discussion of risk factors did not adequately warn potential investors about the already occurring negative results and trends the Company was observing in Navan's revenue growth.

54.    *Third*, Defendants' failure to disclose the aforementioned material information rendered false and misleading the Offering Documents' many references to known risks that "may" affect the Company.

55.    Navan's stock declined after the Company announced its third fiscal quarter of 2025 earnings on December 15, 2025, during which it reported a 39% increase in sales and marketing expenses from the prior quarter.  Navan also surprised the market by announcing its Chief Financial Officer would step down from her position.

56.    On this news, Navan's stock dropped almost 12% to close at $12.90 per share on December 16, 2025.

### FALSE AND MISLEADING STATEMENTS

57.    On October 30, 2025, Navan filed its Prospectus with the SEC.  The Prospectus stated that the Company is "focused on continuing to expand our wallet share across existing customer relationships by driving cross-sell and increasing platform adoption."

58.     The Prospectus stated, under "Risk Factors," that Navan has "experienced rapid growth and increased demand for our platform in recent periods, there is no assurance that we will manage our growth successfully, and our recent growth rates may not be indicative of our future growth.  Our rapid growth has resulted in increased costs as we expanded our operations to scale our business and address increased customer and user demand, and we expect to continue to invest broadly across our organization to support our growth" and that "[n]umerous factors have impeded and may continue to impede our ability to attract new customers and retain, and expand the use of our platform within, our customers, including . . . failure of our sales and marketing strategies, including if we spend time and funding on strategies that do not provide sufficient return on our investment."

59.     The "Risk Factors" section continued to state that "While we have experienced significant growth in the number of our customers in recent periods, we do not know whether we will continue to achieve similar customer growth rates in the future."

**THE TRUTH EMERGES**

60.     On December 15, 2025, Navan filed a 10-Q with the SEC to report its earnings for quarter ending October 31, 2025.  The Company also filed an 8-K on the same day.  Navan reported that it increased its sales and marketing expenses to nearly $95 million, a 39% increase from its $68.5 million sales and marketing expenses in the quarter ending July 31, 2025.[2]

61.     On the earnings call, Defendant Cohen announced Defendant Butte's departure from the Company, stating that "As announced, Amy will leave as Navan's CFO on January 9."

62.     On this news, Navan's stock dropped almost 12% to close at $12.90 per share on December 16, 2025.

63.     By the time this case was filed, the Company's stock has continued to fall, and traded as low as $9.20 per share, or nearly 63% below the $25 IPO offering price.

**CLASS ACTION ALLEGATIONS**

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

---

[2]        Navan, Inc., Quarterly Report (Form 10-Q) (Dec. 15, 2025).

65.    Plaintiff brings this action as a class action, pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class consisting of all persons and entities that purchased, or otherwise acquired, Navan common stock issued pursuant or traceable to the Company's IPO.

66.    Excluded from the Class are: (i) Defendants; (ii) present or former executive officers of Navan, members of the Navan's Board, and members of their immediate families (as defined in 17 C.F.R. §229.404, Instructions (1)(a)(iii) and (1)(b)(ii)); (iii) any of the foregoing persons' legal representatives, heirs, successors, or assigns; and (iv) any entities in which Defendants have or had a controlling interest, or any affiliate of Navan.

67.    The members of the Class are so numerous that joinder of all members is impracticable.  The Company's common stock was actively traded on the Nasdaq, a national securities exchange.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the Class.  Record owners and other members of the Class may be identified from records maintained by Navan or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

68.    Plaintiff's claims are typical of the claims of Class members, who were all similarly affected by Defendants' wrongful conduct in violation of the federal securities laws.  Further, Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class and securities litigation.

69.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the members of the Class are:

        a.    whether Defendants violated the Securities Act;

        b.    whether statements made in the Offering Documents were materially incomplete or otherwise in violation of applicable SEC regulations;

c.    whether statements made in the Offering Documents omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

d.    the extent of damage sustained by Class members and the appropriate measure of damages.

70.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Further, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for Class members to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## CLAIM ONE

### For Violations of §11 of the Securities Act
### (Against All Defendants)

71.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

72.    This claim is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.  This is a non-fraud cause of action.  Plaintiff does not assert that any Defendant committed intentional or reckless misconduct or that Defendants acted with scienter or fraudulent intent.

73.    The Offering Documents were materially misleading and incomplete, and omitted facts necessary to make the statements made therein not misleading and omitted to state material facts required to be stated therein.

74.    The Company is the registrant of the Navan common stock purchased by Plaintiff and the proposed Class.  As such, the Company is strictly liable for the materially misleading statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate.    By virtue of the Offering Documents containing material misrepresentations and omissions of material fact necessary to make the statements therein not false and misleading, Navan is liable under §11 of the Securities Act to Plaintiff and the Class.

75.     The Individual Defendants each signed the Offering Documents and caused their issuance.  As such, each is strictly liable for the materially inaccurate statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless he or she is able to carry his or her burden of establishing an affirmative "due diligence" defense.  The Individual Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents and ensure that they were true and accurate, there were no omissions of material facts that would make the Offering Documents misleading, and the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the materially misleading statements and omissions contained in the Offering Documents and also should have known of the omissions of material fact necessary to make the statements made therein not misleading.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class.

76.     The Underwriter Defendants each served as underwriters in connection with the IPO.  As such, each is strictly liable for the materially misleading and incomplete statements contained in the Offering Documents and the failure of the Offering Documents to be complete and accurate, unless it is able to carry its burden of establishing an affirmative "due diligence" defense.  The Underwriter Defendants each had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Documents.  They had a duty to ensure that such statements were true and accurate, that there were no omissions of material facts that would make the Offering Documents misleading, and that the documents contained all facts required to be stated therein.  In the exercise of reasonable care, the Underwriter Defendants should have known of the materially misleading statements and omissions contained in the Offering Documents and also should have known of the omissions of material facts necessary to make the statements made therein not misleading.  Accordingly, each of the Underwriter Defendants is liable to Plaintiff and the Class.

77.     Defendants acted negligently in preparing the Offering Documents.  None of the Defendants named in this Claim made a reasonable investigation or possess reasonable grounds for the belief that the statements contained in the Offering Documents were without omission of

any material facts and were not materially misleading. In alleging the foregoing, Plaintiff specifically disclaims any allegation of fraud.

78. By reasons of the conduct herein alleged, each Defendant named in this claim violated §11 of the Securities Act.

79. None of the untrue statements or omissions of material fact in the Offering Documents alleged herein was a forward-looking statement. Rather, each such statement concerned existing facts. Moreover, the Offering Documents did not properly identify any of the materially misleading statements as forward-looking statements and did not disclose information that undermined the putative validity of these statements.

80. Plaintiff acquired the Company's securities pursuant or traceable to the Offering Documents and without knowledge of the materially misleading statements and/or omissions alleged herein. Plaintiff sustained damages, and the price of the Company's shares declined substantially due to materially misleading and incomplete Offering Documents.

81. This Claim is brought within one year after the discovery of the untrue statements and omissions and within three years of the date of the Offering.

82. By virtue of the foregoing, Plaintiff and the other members of the Class are entitled to damages under §11, as measured by the provisions of §11(e), from the Defendants and each of them, jointly and severally.

**CLAIM TWO**

**For Violations of §12(a) of the Securities Act**
**(Against All Defendants)**

83. Plaintiff repeats and realleges each and every allegation contained above, as if fully set forth herein.

84. Each Defendant promoted, solicited, and sold Navan common stock pursuant to the Offering Documents.

85. The Prospectus for the IPO contained materially misleading statements of fact, and concealed and failed to disclose material facts, as detailed above. Defendants owed all members of the Class who purchased Navan shares pursuant or traceable to the Prospectus the duty to make

a reasonable and diligent investigation of the statements contained in the Prospectus, to ensure that such statements were true and that there was no omission to state a material fact required to be stated, in order to make the statements contained therein not misleading.  Defendants, in the exercise of reasonable care, should have known of the materially misleading statements and omissions contained in the Prospectus, as set forth above.

86.    No member of the Class knew, nor in the exercise of reasonable diligence could have known, of the materially misleading statements and omissions contained in the Prospectus at the time he or she acquired Navan shares.

87.    By reason of the conduct alleged herein, Defendants violated §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2).  As a direct and proximate result of such violations, all members of the proposed Class who purchased Navan securities pursuant to the Prospectus sustained substantial damages in connection with their purchases of the shares.  Accordingly, all members of the Class who hold Navan securities that they acquired pursuant to the Prospectus have the right to rescind and recover the consideration paid for their shares, and to recover based on a recessionary measure of damages from Defendants sued herein, and all Class members who have sold such acquired Navan shares seek damages to the extent permitted by law.

## CLAIM THREE

### For Violations of §15 of the Securities Act
### (Against the Individual Defendants)

88.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

89.    This claim is brought pursuant to §15 of the Securities Act, 15 U.S.C. §77o, on behalf of the Class, against each Individual Defendant.

90.    The Individual Defendants were controlling persons of the Company within the meaning of §15 of the Securities Act.  By reason of their ownership interest in, senior management positions at, and/or directorships held at the Company, as alleged above, these Defendants invested in, individually and collectively, and had the power to influence, and exercised the same over, the Company to cause it to engage in the conduct complained of herein.  Similarly, each Individual

Defendant not only controlled those subject to liability as a primary violator of §11 of the Securities Act, as alleged above, but he or she also directly participated in controlling Navan by having signed, or authorized the signing of, the Registration Statement and authorizing the issuance and offering of Navan securities as alleged herein.

91.    As control persons of Navan, each Individual Defendant is jointly and severally liable pursuant to §15 of the Securities Act with and to the same extent as Navan for its violations of §11 of the Securities Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, prays for relief and judgment as follows:

A.    Declaring that this action is a proper class action, pursuant to Federal Rule of Civil Procedure 23, certifying Plaintiff as a representative of the Class, and designating Plaintiff's counsel as Class Counsel;

B.    Awarding Plaintiff and the other members of the Class compensatory damages;

C.    Awarding Plaintiff and the other members of the Class rescission on their §12(a)(2) claims;

D.    Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

E.    Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury of all issues that may be so tried.

DATED:  February 23, 2026

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*/s/* John T. Jasnoch

John T. Jasnoch (CA 281605)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Tel.: (619) 233-4565
jjasnoch@scott-scott.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Thomas L. Laughlin, IV (*pro hac vice forthcoming*)
Mandeep S. Minhas (*pro hac vice forthcoming*)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Tel.: (212) 233-6444
tlaughlin@scott-scott.com
mminhas@scott-scott.com

CLASS ACTION COMPLAINT

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that on February 23, 2026, I caused the foregoing document to be filed

3  with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

4  to the email addresses denoted on the Electronic Mail Notice List.

5      Executed on February 23, 2026, at San Diego, California.

6

7                                    /s/ John T. Jasnoch

8                                    John T. Jasnoch (CA 281605)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

I, David McCown, hereby certify that the following is true and correct to the best of my knowledge, information, and belief:

1.      I have reviewed a complaint against Navan, Inc. ("Navan" or the "Company") and authorize Scott+Scott Attorneys at Law LLP to file a comparable complaint on my behalf.

2.      I am willing to serve as a representative party on behalf of all persons and entities that purchased, or otherwise acquired, Navan common stock pursuant and/or traceable to the Company's public offering held on or about October 30, 2025, including providing testimony at deposition and trial if necessary.

3.      During the relevant period, I purchased and/or sold the security that is the subject of the complaint, as set forth in the attached Schedule A.

4.      I did not engage in the foregoing transactions at the direction of counsel nor in order to participate in any private action arising under the Securities Act of 1933 (the "Securities Act") or the Securities Exchange Act of 1934 (the "Exchange Act").

5.      During the three-year period preceding the date of my signing this Certification, I have not sought to serve, or served, as a representative party or lead plaintiff on behalf of a class in any private action arising under the Securities Act or the Exchange Act.

6.      I will not accept any payment for serving as a representative party on behalf of the Class beyond the *pro rata* share of any recovery, except for such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

Docusign Envelope ID: 9CDFF97B-1BAD-416C-AE66-C622005F96F5

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February ___, 2026.

23

David McCown

# Schedule A

**NAVAN INC-CL A**                    **Ticker:**     **NAVN**     **Cusip:**     **639193101**
<span style="color:red">Class Period: 10/30/2025 to 02/18/2026</span>

**David McCown**                                         **DATE**     **SHARES**     **PRICE**
                                         **Purchases:**     10/30/2025     20     $25.00
                                         **Sales:**     12/2/2025     20     $15.52